## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTOINETTE MARIA BYNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number 2:13-cv-2220-SLB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Antoinette Maria Byner brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for supplemental security income ["SSI"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed in part. Because the decision of the Commissioner of Social Security fails to evaluate plaintiff's obesity in the assessment of plaintiff's residual functional capacity, the decision will be remanded for further proceedings not inconsistent with this opinion.

## I. PROCEDURAL HISTORY

Plaintiff initially filed an application for SSI on August 16, 2008, alleging a disability onset date of July 1, 2008. (R. 18.)[1] This application was denied on October 21, 2008 by the

---

[1] Reference to a document number, ("Doc.___"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.___").

Social Security Administration ["SSA"], and plaintiff subsequently requested a hearing before an Administrative Law Judge ["ALJ"], which was held on February 11, 2010. (R. 18.) The ALJ rejected plaintiff's application on April 28, 2010. (R. 18, 90.) Plaintiff then filed another application for SSI on October 20, 2010, alleging a disability onset date of October 1, 2006, which plaintiff later amended to October 20, 2010. (R. 18, 36, 94.) The SSA denied plaintiff's application on January 26, 2011. (R. 18, 107.) Subsequently, plaintiff requested a hearing before an ALJ, which was held on June 12, 2012. (R. 33, 121.) After the hearing, the ALJ found that, while plaintiff was unable to perform any past relevant work, she was capable of making a vocational adjustment to other occupations, such as retail associate, ticket seller, counter sales clerk, and cashier, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 25-26.) In light of these findings, the ALJ denied plaintiff's request for SSI on July 3, 2012. (R. 26.)

On August 7, 2012, plaintiff, with the assistance of new counsel, petitioned the Appeals Council to review the ALJ's decision, (R. 12), and thereafter, submitted arguments for review, (R. 268-72). On October 10, 2013, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1.) Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on December 9, 2013. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. <u>DISCUSSION</u>

3

## A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for SSI.[2] *See* 20 C.F.R. § 404.1520(a)(1)-(2); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). For the purposes of this evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant

---

[2] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. . . . If we can find that you are disabled or not disabled at a step, we make our determination or decision and do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.

20 C.F.R. § 404.1520(a)(4).

[3] The Regulations define "substantial gainful activity":

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work

is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since October 20, 2010, the alleged onset date. (R. 20.)

### 2. Severe Impairments

---

may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

[4] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*."  11th Cir. R. 36-2 (emphasis added).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[5] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight

---

[5] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* SSR 85-28, 1985 WL 56856 (1985). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, status-post cervical spine surgery; asthma; chest pain, probable costochondritis; and bilateral heel spurs." (R. 20.) The ALJ found that plaintiff's additional limitations of hypertension, obesity, carpal tunnel syndrome, and depression were non-severe because those "conditions constitute[d] at most only a slight abnormality that cannot reasonably be expected to produce more than minimal, if any, work-related limitations." (R. 21.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20

7

C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 22.) Specifically, the ALJ found that medical evidence did not establish impairments equaling listings 1.04 for a spinal disorder, 3.03 for asthma, or 1.02 for major dsyfunction of a joint. (R. 22-23.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commissioner's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled.  20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden

of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had a high school education and was an individual closely approaching advanced age on the alleged onset date. (R. 25.) The ALJ made the following findings regarding plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except the claimant can never climb ladders, ropes, or scaffolding; can occasionally perform other postural activities; can frequently but not constantly perform overhead reaching, handling, or fingering with her right upper extremity; cannot work around hazards; and should avoid concentrated exposure to temperature extremes and respiratory irritants.

(R. 23.) The ALJ found that plaintiff's RFC restricted her from performing any past relevant work. (R. 25.)

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you

live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing

such other work, the Commissioner must find the claimant disabled. 20 C.F.R.

§ 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist

in the national economy that plaintiff could perform, considering her RFC, age, education,

and work experience. The VE testified that an individual with plaintiff's limitations and

vocational factors could perform the jobs of retail sale associate, ticket seller, counter sales

clerk, and cashier, which are jobs that exist in significant numbers in Alabama and in the

national economy. (R. 51-52.)

Because the ALJ found that jobs consistent with plaintiff's RFC and vocational

factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (*Id.*)

## B. MS. BYNER'S CLAIMS

Plaintiff raises two issues on appeal: (1) whether the ALJ erred in failing to report a

consultative exam and in failing to further develop the record; and (2) whether the ALJ failed

to properly consider the effects of plaintiff's depression and obesity. (Doc. 9 at 11-12.)

### 1. Plaintiff's Consultative Exam and Development of the Record

Plaintiff alleges that the ALJ failed to report plaintiff's consultative exam ("CE") in

the ALJ's assessment of plaintiff's RFC. Because the SSA requested that a physician perform

the CE, plaintiff asserts that an "inconsistency" or "inefficiency" in the evidence must have existed that warranted that request, and therefore, the ALJ was required to further develop the record to resolve that "inconsistency" or "insufficiency" when the ALJ chose not to report plaintiff's CE.[6] (Doc. 9 at 8, 11.) Plaintiff also challenges the ALJ's choice not to further develop the record by obtaining another medical source opinion through a consultative or medical exam. The court finds that the ALJ did report the CE in his assessment of plaintiff's RFC and that the ALJ committed no error by not requesting an additional medical source opinion.

Social Security Ruling 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929 that the ALJ must follow[7]: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or

---

[6] Notably, plaintiff does not identify the inconsistency or insufficiency she claims the ALJ failed to resolve by not developing the record. (*See* Doc. 9.)

[7] Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*].")). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

functionally limiting effects of the individual's symptoms." SSR 96-7p. If the ALJ finds that the plaintiff's case survives the first step, then

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ found that, under step one, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but under step two, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 24.)

Contrary to plaintiff's claim, the ALJ accepted and reported the CE performed by Dr. David Aarons on January 13, 2011, by stating that Dr. Aarons's assessment supports the ALJ's finding that plaintiff "could not perform more than a light level of exertion with limited postural abilities, exposure to hazards, and limited exposure to certain environmental conditions." (R. 24.) The ALJ's opinion is consistent with the CE performed by Dr. Aarons because the ALJ found that plaintiff suffers from the same severe impairments noted by Dr. Aarons in his report: degenerative disc disease of the cervical and lumbar spine, chest pain, shortness of breath, and heel spurs. (R. 20, 491.)

12

While Dr. Aarons's opinion supports plaintiff's claim that she suffers from several severe impairments, the CE report does not limit plaintiff's activities or otherwise remark on her physical capabilities, thereby shedding little light on the limiting effects of plaintiff's impairments. Additionally, there is no objective medical evidence in the record to support plaintiff's statements about the intensity, persistence, or functionally limiting effects of her pain. (*See* R. 514.) "[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p. No error resulted from the ALJ's choice not to further develop the record because the ALJ relied on substantial evidence to assess plaintiff's credibility.

First, the ALJ relied on plaintiff's activities of daily living to discredit her testimony about the intensity, persistence, and limiting effects of her pain. The ALJ's opinion states that, contrary to plaintiff's assertions that her children take care of her, that she cannot raise her arms, pick up her feet, hold onto objects, or bend, and that she is constantly dizzy, plaintiff is able to "shop in stores, vacuum, sweep, wash dishes, dress, perform household chores and self-care activities, and talk on the phone." (R. 24.)

The ALJ's reliance on several of plaintiff's daily activities is misplaced. First, the ALJ stated that plaintiff can perform household chores, such as sweeping and vacuuming, but plaintiff stated in a Function Report that she needs help sweeping, vacuuming, washing dishes and performing household chores. (R. 229.) While the Function Report does not state

the extent to which plaintiff needs help, it indicates that plaintiff does not perform those activities alone. Plaintiff also testified at the ALJ hearing that her impairments prevent her from sweeping and vacuuming. (R. 47.) Regarding self-care activities, plaintiff consistently stated in the record that she requires help. In a Function Report, plaintiff stated that her son cooks for her and that her daughter helps her dress and wash and braid her hair. (R. 226, 228-29.) The CE report completed by Dr. Aarons is consistent with that Function Report, as it notes that plaintiff bathes and dresses with assistance because she cannot wash her back, feet, or lower legs and cannot raise her arms over her head in order to put on clothes. (R. 488.) These activities of daily living do not constitute substantial evidence upon which the ALJ could rely to discredit plaintiff's testimony of pain.

However, the ALJ relied on additional evidence. The ALJ considered plaintiff's persistent smoking habit and concluded that the allegedly limiting effects of plaintiff's breathing problems are inconsistent with plaintiff's continued use of tobacco. (R. 24.) Plaintiff admitted to smoking approximately six cigarettes per day despite doctors' advice that she should quit, and at least four doctors documented plaintiff's smoking habit during plaintiff's alleged period of disability. (R. 39, 480, 482, 488, 524.) The ALJ also found that plaintiff's daily activity of talking on the phone contradicts her testimony that she cannot hold onto objects due to muscle weakness. (R. 24, 41, 231.)

The ALJ considered reports by a State reviewing physician, Dr. Robert Heilpurn, and a report by examining physician Laura Hughes. While Dr. Heilpurn noted that, based on the record, he believed plaintiff's statements that she experienced pain while performing

physical activity were credible, he also reported that plaintiff could sit, stand, and walk six hours in an eight-hour workday, occasionally lift up to twenty pounds, frequently lift up to ten pounds, and push or pull without limitation. (R. 509.) Thus, his opinion reflects that, while plaintiff did experience pain from her impairments, those impairments were not as limiting as plaintiff alleged. Dr. Laura Hughes's report supports this assessment. (R. 540.) She took x-rays of plaintiff's wrists, hands, ankles, and feet after plaintiff sought treatment for pain and reported that x-rays of plaintiff's feet showed "rudimentary heel spurs" that were "[o]therwise unimpressive." (R. 25, 540.)

The ALJ additionally relied on plaintiff's limited work history to discredit her testimony: "While not fully dispositive, the claimant's poor work history, where she failed to earn more than $1,500 a year in her lifetime, does not show the claimant has an appreciable work ethic." (R. 24.) An ALJ may rely on a plaintiff's poor work history to discredit testimony that she cannot engage in gainful activity, and the ALJ appropriately relied on such evidence in this case to further discredit plaintiff's testimony that pain prevents her from working. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (noting that "[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability") (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993)).

The court concludes that the ALJ relied on substantial evidence to discredit plaintiff's allegations about the limiting effects of her impairments, and thus, the ALJ did not err in choosing not to further develop the record by obtaining additional medical source opinions.

**2. Effects of Plaintiff's Depression and Obesity**

Plaintiff argues that the ALJ erred in assessing her RFC by not considering her non-severe impairments of depression and obesity. The court finds that while the ALJ adequately considered plaintiff's depression in assessing her RFC, plaintiff is correct that the ALJ failed to appropriately evaluate plaintiff's obesity.

An ALJ must consider all of a claimant's medically determinable impairments of which the ALJ is aware, including non-severe medically determinable impairments, when assessing the claimant's RFC. 20 C.F.R. § 416.945(a)(2). Contrary to plaintiff's assertion, the ALJ did consider plaintiff's depression in assessing her RFC. The ALJ agreed with State reviewing physician Dr. Robert Estock's report, in which he opined that (1) plaintiff's mental impairment is not severe, (2) the impairment places only a mild restriction on plaintiff's daily activities, social functioning, and ability to maintain concentration, persistence, and pace, and (3) plaintiff has experienced no episodes of decompensation lasting for an extended duration. (R. 24, 494, 504.) Dr. Estock noted that plaintiff was seeking neither mental health treatment nor a change in her medication dosage, (R. 506), and found that plaintiff's depression was "not functionally limiting and [was] fairly controlled with her medication." (*Id.*) The ALJ cited this evidence along with "uncertainty regarding the claimant's compliance with medication" in finding that plaintiff's depression did not affect plaintiff's ability to engage in gainful activity. (R. 24.) Therefore, the court finds that the ALJ properly considered plaintiff's non-severe impairment of depression in assessing plaintiff's RFC and relied on substantial evidence in finding that this impairment was not functionally limiting.

16

Plaintiff next contends that the ALJ failed to consider her non-severe impairment of obesity in assessing her RFC. Social Security Ruling 02-1p guides courts in evaluating disability claims brought by a claimant with obesity. The Ruling mandates that an ALJ consider a claimant's obesity at every step of the sequential evaluation process:

> [T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. [The Regulations] also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

*Titles II and XVI: Evaluation of Obesity*, SSR 02-1p (S.S.A. Sept. 12, 2002).

At step two in the sequential evaluation process, the ALJ found that "the evidentiary record does not indicate the claimant's [obesity] causes more than minimal limitations to her ability to perform work activity." (R. 21.) In assessing plaintiff's RFC, the ALJ did not mention plaintiff's obesity but stated that after reviewing the evidence, he found "few changes in the claimant's condition since her previous disability claim that was rejected by Administrative Law Judge Kenneth Wilson" in 2010. (R. 24.) In the 2010 opinion, the ALJ evaluated plaintiff's obesity pursuant to SSR 02-1p and found that it did not significantly affect her "ability to perform routine movements and necessary physical activities within the light level of work environment." (R. 87.) While the ALJ concluded that obesity aggravated plaintiff's back, the ALJ relied on factors such as plaintiff's ability to walk without an assistive device, her ability to squat and arise, and the fact that plaintiff did not testify to any

problems caused by obesity to find that obesity did not significantly limit plaintiff's physical ability to perform light exertional work. (*Id.*)

The ALJ's statement that he found few changes since 2010 does not show that the ALJ considered plaintiff's obesity. While Dr. Aarons noted in the January 2011 CE report that plaintiff walked into the examination room without assistance, (R. 489), plaintiff testified at the ALJ hearing on June 12, 2012 that she had been using a walker prescribed by her doctor to assist with balance for the past two and a half months. (R. 46.) Additionally, Dr. Aarons's notes do not show that plaintiff had the same ability during the CE that she had during the exam mentioned in the 2010 ALJ opinion. For example, Dr. Aarons did not test plaintiff's ability to squat and arise, and his notes state that she is a "morbidly obese" woman weighing twice as much as she should, that she needed assistance getting on and off the examination table, and that she put her shoes on independently only because they were slip-on shoes. (R. 489.) Dr. Heilpurn also diagnosed plaintiff with "morbid obesity." (R. 508.) Additionally, unlike in the 2010 ALJ hearing, plaintiff testified in the June 2012 hearing about problems associated with her weight. She testified that she regularly uses a "traction machine" that relieves pain by lifting weight off her body. (R. 50.)

The ALJ was required to address the possible effects obesity had, if any, on plaintiff's RFC even if a consideration of plaintiff's obesity would not have affected the ALJ's ultimate RFC finding. Furthermore, the court cannot find that the ALJ's error was harmless. In a similar case arising from an ALJ's failure to address the plaintiff's obesity, the District Court for the Middle District of Florida explained:

18

> [T]he court is not authorized to evaluate the plaintiff's obesity to determine whether it is a severe or nonsevere impairment and, if it is a severe impairment, to decide what the functional limitations from that impairment are. That responsibility is assigned to the law judge. Consequently, the harmless error doctrine cannot be employed since it would require the court to undertake a task that has been committed to the law judge.

*Parker v. Astrue*, No. 8:09-CV-1177-T-TGW, 2010 WL 1836818, at *3 (M.D. Fla. May 3, 2010).

The court finds that the ALJ did not consider plaintiff's non-severe impairment of obesity in assessing her RFC, as required by 20 C.F.R. § 416.945(a)(2) and SSR 02-1p, and as the Commissioner's brief does not address this issue, the Commissioner has provided no reason for the court to find otherwise. Therefore, this case will be remanded to the Commissioner for an evaluation of plaintiff's obesity in the assessment of plaintiff's residual functional capacity.

## IV. <u>CONCLUSION</u>

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying plaintiff's claim for SSI is due to be affirmed in part and remanded for an evaluation of plaintiff's obesity in the assessment of plaintiff's residual functional capacity. An Order affirming in part and remanding the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion. Regarding plaintiff's request to remove a document containing a representative's

identification information, (*see* Doc. 9 at 11), the record in this case is not available for public disclosure, so no further action is required to protect the information.

      **DONE** this 16th day of January, 2015.


SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE